May it please the court, Brandon Vogel on behalf of appellant Raymond Rayes and I would like to reserve three minutes for rebuttal please. This appeal presents largely two overarching issues which both relate to federal preemption. The first of which is the misapplication in our view by the lower court of the regulatory concept of newly acquired information especially in the context of 12b6 motion which is what we were dealing with here. The second issue is the lower courts misapplication of the United States Supreme Court case of Buckman versus plaintiffs legal committee and the court in this instance applied Buckman to preempt significant aspects of Mr. Rayes's claims. First and starting with the concept of newly acquired information under CFR 601.12 F6 newly acquired information is defined in detail. I'm not going to go through the whole definition but want to focus on a couple areas that I think are pertinent to this case. The first of which is to establish newly acquired information for purposes of a failure to warn claim and that that regulatory concept only applies to plaintiffs failure to warn claim. He has multiple other claims that he asserted here as well. One thing we have to show is that there is information that was not previously submitted to the FDA. That's one of the components of the definition. Another is that there are various types of newly acquired information that are specifically laid out in that definition. There's a couple that are specifically relevant here. One is that adverse event reports are specifically enumerated as one type of newly acquired information. Another is the reanalysis of existing data that could necessarily lead to a different conclusion that was previously submitted to the FDA. And the last issue here is whether the newly acquired information poses a different severity or frequency of injury than was previously discussed or submitted with the FDA. So with those concepts in mind as part of the definition, the first sort of misapplication that the plaintiff's view was applied here was that in the adverse event reports presented to the court to constitute newly acquired information and there were six relevant adverse event reports submitted prior to Mr. Reyes's last use of the drug in question and that extends to more than a hundred reports prior to his ultimate diagnosis with retinal vascular occlusion which is the injury at issue. I added, I added up I got ten reports you keep saying six so where are my numbers off? Sure, so it's six patients with ten unique injuries. Alright. If that makes sense and I think it was stated that way in our briefs but yes I think that hopefully explains the issue. But as to the adverse event reports that that were discussed in plaintiff's complaint, of those six reports multiple of those reports had causality findings included in them and four of the six reports were ultimately of such high quality they were published in the medical literature and again the newly acquired information definition specifically includes adverse event reports as being one way to establish that. Again the court here applied a cut off of the plaintiff's last dose of BOVU as being the dividing line for the analysis of adverse event reports. We believe it should have continued all the way until up until his diagnosis four months later because under established California law there is a continuing post-sale duty to warn especially in the context of a negligence claim which is a claim also at issue in Mr. Ray's case. So if you consider more than a hundred adverse event reports certainly that's something that constitutes newly acquired information. We think six is enough because in this context when you go back to the definition of a greater frequency of events there were only three adverse event reports of retinal vasculitis or vascular occlusion submitted to the FDA by Novartis and what we're talking about here is six adverse event reports in less than 90 days from the drug being placed on the market. The clinical trial reports those three reports I mentioned were of multi years of clinical trials for this drug and again at the pleading stage I would submit to you that that should be of newly acquired information. But in this instance there's actually more. We also pled in pretty great specificity that there was additional reports of retinal vasculitis or vascular occlusion from the clinical trials for this drug that were not initially reported to the FDA. Initially there were three reports it turns out there were 36. So when you go back to the regulatory definition of analysis a reanalysis of existing data which this would qualify as you look at it and you say does it meet that definition? Yes because it was not previously submitted to the FDA. There were three reports submitted not 36 and clinical trial data is also expressly included in the definition and it reveals a vastly greater reporting rate 36 versus 3 from what had previously been submitted to the FDA. So we would submit this is an independent basis for establishing newly acquired information in this case. Now in my read of the lower court's order the lower court considered this clinical trial data to be preempted by Buckman. I would submit to you that is not correct. In this instance Buckman is not applicable because what we were doing in showing that this clinical trial evidence was not submitted to the FDA was meeting the specific regulatory prong in 601.12. That's one element we have to prove is that this information was not previously submitted to the FDA. So what we're arguing in this sense is not that the FDA was defrauded but rather just trying to meet that initial burden of showing these additional 33 reports were not previously submitted to the FDA. In my read of the court's order the court took that allegation as a fraud on the FDA allegation and that's simply not the case. And that makes very clear that what we are alleging is the information regarding the clinical trial data and the more generalized information about the risk of retinovascular occlusion was not conveyed to physicians. We do not make fraud on the FDA allegations. So in that context we're talking about a traditional state tort law claim where the allegations are aimed at misinformation or lack of information as to the medical community and specifically Mr. Reyes is treating physician. We're not hinging our claim on fraud on the FDA. Now in this instance I think as the complaint alleges this information was not provided to the FDA but that's not an element of our claim as was the case in Buckman. In Buckman the whole claim was it was actually a failure to properly advise the FDA about the condition that the device was going to be used in. And so with that instance the whole claim hinged on the fraud on the FDA element and the basic allegation that the product never should have made it to market. That's not our allegation. Our allegation here is that physicians were misinformed or not informed at all about these risks. And again that falls into the classic parallel claims that have been carved out and distinguished from the opinion in Buckman. And again in the context of the post-sale duty to warn, which I touched on briefly, we cite to a couple cases Ferrari versus Natural Partners and Roberts versus Electrolux which both stand for the proposition that in California there is a post-sale duty to warn especially in the context of a negligence claim. What you have to look at is the company's failure to act. Is that reasonable? Is that failure to act reasonable under the circumstances? And I think if you look even at the cases that Novartis cites to say this doesn't apply in the pharmaceutical context, in reading those cases there's two important things to note. One, it doesn't appear that any of those courts were asked to specifically address the concept of whether a post-sale duty to warn applies. Number two, all of those cases were in the context of strict liability claims only, not negligence claims. And the aims of the two are obviously very different. Well with respect to your client, if we accept your argument that there's a continuing duty to warn under California law, where do you allege in the complaint that these post-incident reports that it would have changed or likely have had an impact on the treatment for your client? So where is that? I read it in your brief but I'm curious where it is in the complaint. Well first of all we do allege that there is a continuing duty to warn in the complaint. Yes. I understand your question to be a little broader than that so I want to address that. Well it's a little narrower actually because I'm trying to connect it to your client. Fair. And see if it's in there. We do address the continuing duty to warn and we do address the overarching failure to warn as being the cause of his injury. And certainly in my view that is specific enough. And again I think this raises another issue that I was going to get to and now might be a good time to address it, which is that in the Ninth Circuit it's well established that an issue just as the one you raise, if we need more specificity on an issue like that and certainly we could plead that and it wouldn't be futile to do so, then a dismissal without prejudice with leave to amend would have been the appropriate outcome here, not a dismissal with prejudice. So while I think we did plead that with sufficient specificity to the extent this court disagrees, I think that's the proper avenue to go, would be to remand with leave to amend to address potentially an issue like the one you raise, Your Honor. So you agree it's not in the complaint? I agree that we don't tie the continuing duty to warn to the ultimate... To post-incident. Correct. I think that is a fair statement. I think we plead them separately, but to the specific question that was asked of me I think that's a fair statement. The last thing that I wanted to mention here is we do have other claims, specifically the failure to test, which is a component of Mr. Reyes's negligence claim, which the court, in my reading of the order, really doesn't even assess. And the failure to test claim or portion of the negligence claim itself is one that's not impacted by Buckman and is not subject to newly acquired information. In my review of the lower court's order, that issue is not addressed at all, and we think that is certainly a viable component of our negligence claim in the sense of the 33 additional reports that were either not found or withheld of retinal vasculitis or vascular occlusion from clinical trials. And also, secondarily, the failure to study this and that is people who would use similar therapies in trying to switch them over to B.O. view. That was not a component of the study population in the clinical trials, and we believe that is a significant component of our negligence claim overall. Honorary, sir. Yes, I would. Thank you. Your Honors, may it please the Court, Matthew Malinowski from Novartis. This case, Your Honors, is about allegations or, more specifically, the lack of any allegations made by the plaintiffs in their complaint of the existence of newly acquired information that would have allowed Novartis to go unilaterally without pre-approval by the FDA and change the label before the plaintiff's last exposure, which is January 10th, I believe, of 2020, that would have prevented any kind of injury here. It's about the lack of allegations, Your Honor, and under the FDCA, a manufacturer like Novartis may change its label under the changes being affected regulation, but only if there is newly acquired information. He touched briefly on the newly acquired information, but that's really the center of what this case is all about. Newly acquired information is defined by the regulation as four elements to it. It has to be scientific data. It has to be information not previously submitted to the FDA. It has to have a reasonable, provide reasonable evidence of a causal association, and most importantly in this case, it has to reveal risks of a different type, risk, or severity than previously known by the FDA. And I would submit, Your Honor, that the allegations in this case don't meet any of those four elements. What were the allegations? Judge McCune, you correctly pointed out that there are six, six adverse event reports. The drug was released in October of 2019. The last exposure by plaintiff was January 10th of 2020. That's the relevant window. That's what every court who's ever looked at this newly acquired information says, is it's the date of last exposure or the date of prescription. It has, it can't be, it can't extend beyond that. All the other, all the other information that, that my friend mentioned comes after January 10th, usually many months after January 10th. It can't be newly acquired information when it's subsequent to the last exposure to the, to the compound, to B of U in this instance. Should, should, he argued that rather than dismissal with prejudice, there should at least be an opportunity to amend on that post incident report. He could argue that. That would be a better argument for him, but it's still. Well, I mean, he did argue that. So, I mean, I guess I'm asking you why at this early stage there shouldn't be an opportunity to amend. So, whether or not the dismissal is with or without prejudice or there's a decision to allow an amendment is within the trial court's discretion. He asked to amend under the, he asked the trial court for leave to amend. Trial court exercised its discretion. And then in analyzing our motion to dismiss, did what he was required to do, that the trial court did what he was required to do, which is act as a gatekeeper under, under the Albrecht Supreme Court decision for all questions related to preemption, and said amendment would be futile, right? Amendment would be futile. And I know the plaintiffs cite to other trial courts throughout the country, actually two other, two other courts, one court has a number of cases, one judge, one courthouse, in this litigation where they denied motion, they denied motions to dismiss, right? Those, those complaints were identical to the complaint filed here. So, the trial court correctly determined and exercises determined its, discretion in finding that amendment would be futile. And that's an abuse of discretion standard. And I don't believe they've even argued that the judge at the trial court abused his discretion here, and how could he have, right? Your adversary indicates that this is a factual issue that shouldn't have been acted upon. That would maybe push it beyond the usual latitude that we allow the district court. What's your response to his argument? My response to his argument, and, and it's outlined in, in the, in the lower court's order quite, quite clearly. Adverse event reports, six adverse event reports can't possibly qualify as newly acquired information. But I don't even have to prove that here, Your Honor. There's no allegation in this case. There's no allegation in the complaint that six adverse event reports reveal risks of a different type, frequency, or severity. My colleague admitted in the clinical trials, there were three, there, there were reports of the very injury at issue here. That was submitted to the FDA. There's, the, the, they concede that, that all the clinical trial information was submitted to the FDA. There's no allegation that we did not submit that clinical trials to the FDA. It, that information was known by the FDA and it was part of the negotiation between the FDA and the company in coming up with the FDA approved label that, that was issued in October of 2019 at product launch. So that's, that prong is legally under the preemption argument and, and the judge, you can't kick this to a jury. This is not a factual issue that can be kicked to a jury. Under Albrecht, it's clear that preemption, even factual issues related preempt, to preemption are for the judge to decide. They are not issues that can be kicked to the, to the, to the trier, in fact, to the, to the jury. And that, that would be another reason why any reliance on these decisions from Nebraska or the one in, in, in Florida in this litigation should just be rejected because, if anything, the judges there, those, there's two judges, they, they abrogated their, their duty under the legal analysis required for this legal analysis of preemption and whether or not newly acquired information has been properly pled in this case. He already made that, he already made that decision and it's not an abuse of discretion. My colleague mentioned, well, later we find out that there's 33, 33 instead of just three in the clinical trials. What he's trying to do and, and what the trial court actually pointed out in its order, he didn't mention the dates when these things happen, right? It follows far, far outside of the, the, the relevant date, the, the relevant windows that you have to look at, which is October 2019 to last exposure in early January of 2020. This reanalysis that was done and they come up with 33, that happened months and months after plaintiff's exposure, okay? And the point about continuing duty, right? First of all, none of the cases he cite, he cited, that, that my colleagues cite, deal with pharmaceutical exposure cases. And Judge McKeown, you correctly pointed out, would it have made a difference? And, and I think he conceded that there's no, there's no connection in the complaint, in the allegations of, well, there's this continuing duty and would it have made a difference? So then that kind of brings us back to the six or the ten, you know, the six to ten, however you characterize it. But if, but in the preemption analysis, he says, we're not saying fraud on the FDA. We're not in the Buckman camp. What is your response to that? So my response to that is, my reading of the trial court's decision is Buckman applied only to the fraud based claims, which makes sense, right? Because Buckman is fraud on the FDA. And I'll jump to that. If you look at page 29 of their, of their opening briefs, where they're making their, their, their fraud based arguments, it uses words like omitted, concealed, misrepresented, and it doesn't tie it to any specific, any specific statements made to physicians or anyone else. It doesn't allege that those omissions or concealments or, or, or alleged misrepresentations were made to anyone else other than through the initial label that was proved, that was reviewed and accepted by the FDA. That's straight Buckman. That's a, that's a clear Buckman, right? What he's alleging is, and what the trial court correctly found, was Novartis somehow defrauded the FDA, didn't provide the information it should have provided, and getting the drug approved and getting the FDA label approved. And that's, that falls squarely within Buckman. And the trial court got it right. But he, he talks about the label, as I understand it, said 1%, but in fact, according to the allegation, it's 3.3%. Is that a fraud on the FDA claim, or what is that? No, that, we're back to newly reported, comes up with 3.3%. All, all the allegations are in this case is between October and January, there were six adverse event, post-market adverse event reports. Six. The number six is meaningless. The number 33 is meaningless, because we don't know what the denominator is. And it's never alleged. It's not alleged how many BUVU injections were given in that six, in that October to January. Well, that, that gets me back to something maybe you can help me with in terms of your view, and that is this newly discovered evidence that there are these incidents here, but you say it doesn't meet the criteria. Sure, and. And, and, and what part of the criteria, in your view, are not met? I, I feel like none of the four criteria are met. And the trial court actually addressed this. And we, we, we included in our briefing, courts throughout the adverse event reports, do not constitute reasonable evidence of causation. The FDA in guidance documents itself says these are not to be treated as evidence, reliable evidence of causation, or reasonable evidence of causation. Right? It's not even necessarily scientific data, which is, which is problem number one of the definition. I can submit an F, an ADE, an adverse event report. My 13-year-old daughter can. There's absolutely no, no threshold requirement for it. And if you look at their papers, it does, these are not adverse event reports that make causal, causal determinations. They cite from the actual adverse event reports, it says causation is suspected. That's not a causal, that's not a causal conclusion. Right? And. But at this stage of the pleadings, wouldn't that be enough? No, because if that were the case, then the newly acquired information and the, the prong, the, the, the various prongs of it should just be read to not even exist. Because every single day, every drug that's on the market, the company receives an adverse event report from it. Does that mean a single adverse event report for Tylenol means you gotta go and change the FDA approved label for Tylenol? Or you even could go and, and change the label for, for, for a drug, just because there's an adverse event report. And courts throughout the country say, even at the motion to dismiss stage, that's not enough. What the, what the plaintiff is asking this court to do is create a circuit split on this issue. The Ninth Circuit has never addressed this newly acquired inf, information issue, okay? The only two circuits that have addressed it are the First Circuit and the Second are with our position. The First Circuit in 2015 in the In Re Seleccia case addressed this issue and said, this is a threshold pleading issue. This is a motion to dismiss stage as well, just like here. This is a threshold pleading. And I believe that my colleague just admitted he does have a threshold requirement to get past the, the, to, to actually allege newly acquired information. And in, in Re Seleccia, there were two, two published papers. Not just And the First Circuit went through the analysis as it's required under, under Albrecht, and said that doesn't constitute anything, because it doesn't show anything different from, it doesn't reveal risks of a different type, severity, or frequency than previously known by the FDA. So the, the Wyeth case, they kind of laid out what qualifies as adverse events. And they said in that case there were these 20 incidents that related, I guess it's again to gangrene and amputation. So taking the standard they say in Wyeth, why doesn't that apply here? So in Wyeth, the defendant did not argue that there was a, there was a lack of newly acquired information. Wyeth turned, so there's the lack of new, the newly acquired information problem. If you clear, if a plaintiff clears that hurdle, then a defendant can still prove, prove up a preemption defense by showing impossibility, right? That's what Wyeth's all about. We don't get to Wyeth yet in this case. For whatever reason, the defendant in Wyeth did not raise the newly acquired information prong. And so it's really not applicable here. They did in, in Re Seleccia in the First Circuit in 2015. And in the Second Circuit actually has two cases that address this issue. The first was Gibbons in 2019. And there in Gibbons there were not only some adverse event reports, but there were also published studies and other types of reports, nine of them total, okay? That was not enough because it didn't address, the allegations just like here didn't address whether there was a different, the risks that were identified were of a different type, severity, or frequency than previously known by the FDA. And there's no allegation here that these adverse event reports somehow reveal a different type or severity or frequency of a risk that was previously known by the FDA as they concede this was previously known by the FDA. It can't, it can't constitute an increase in frequency because we don't know the denominator and it's not alleged. And there's certainly no allegation that it's a different severity or a type of injury. Also in the Gale case, which was affirmed by the Second Circuit in 2021, that case involved 6,000 adverse event reports, okay? And according to the trial court there in New York, affirmed by the Second Circuit, 6,000 adverse event reports between the time the drug was launched and the time the plaintiff was prescribed the drug is still not enough because adverse event reports are not the types of documents and information that would satisfy the newly acquired information definition under the CFR regulations. I see my time is basically up. One more issue to address is this failure to test. I advise you, look through the complaint. There's no failure to test claim even alleged. And it doesn't matter if there was because it's not recognized under California law. A failure to test, we point this out in our briefing and it's not even addressed in the reply. There's no failure to test cause of action under California law. And my one final point would be all of these claims, and I think he conceded, collapse down into a failure to warn. It all comes down to failure to warn. It's not some amorphous negligence failure to test. It's really did you provide adequate warnings to the physicians or not? And they can't do it. I think a few points I want to clarify. First, as to the clinical trial data, this is clinical trial data that was in Novartis's possession at all times, including prior to plaintiff's first dose of B. O. View. They had the 36 reports of retinal vasculitis and vascular occlusion in their files at all times. And I think the statement was made a couple times that the FDA was aware of three, not 36. That alone should be dispositive of the issue of newly acquired information. It directly meets the criteria in 601.12 F6. The other thing I want to address is the adverse event reports in the post marketing setting. First of all, we if you, even if you cut the date off at have causal findings in the reports themselves. The causality findings set this case apart from the other three cases that my colleague just referred to. All of those cases are distinguishable on two points. None of those reports that were alleged include causality findings. Two of the three cases also involve a drug that already had a black box warning, which is the no warnings whatsoever. In the time, Mr Ray has used the drug. A couple of the points I want to address. There were statements made about other courts, other district courts addressing this, specifically in the district of Nebraska and the Middle District of Florida. And my colleague is correct. The allegations were nearly identical, and I would submit to this court that those courts got it right when they decided that on a 12 B six motion, sufficient allegations were pled to continue with the case. I would submit to you that those courts did the proper analysis, engaged in the proper analysis and reach the proper conclusion in the context of a 12 B six motion. The other last point I want to raise is again. I want to go back directly to the CFR on newly acquired information. There were several references here just made that newly acquired information can never be derived from adverse event reports. You need only look at the definition in the regulation itself. It includes adverse event reports. And so a conclusion that adverse event reports can never be enough is directly contrary to the statutory language. Again, what I would submit to you is the courts that have gone a step further have said in the context of drugs that already have black box warnings and you submit causality assessments or findings, then maybe you have a different scenario. That's simply not this case, Your Honor. Thank you for your time. Thank you, Counsel. Thank both of you for your arguments this morning. You've been very helpful to court, and I also want to thank you for traveling to San Francisco. This is our first week in two years where we've had live arguments, and we appreciate it. So thank you very much. Case just heard will be submitted for decision and will be in recess for the morning. All rise.
judges: WALLACE, THOMAS, McKEOWN